IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CHRISTOPHER O'NEILL-O'MALLEY<br>Plaintiff<br>vs<br>LISKOW & LEWIS; JAMES A. BROWN; GEORGE DENEGRE and ERIN DELATTE<br>Defendants | CIVIL 11-2220CCC |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment filed by the law firm of Liskow & Lewis and its attorneys James A. Brown (Brown), George Denegre and Erin Delatte, defendants who acted as counsel for the Federal Deposit Insurance Corporation (FDIC) (**docket entry 57**), which was opposed by plaintiff Christopher O'Neill O'Malley (O'Neill) (docket entry 61), who claims that defendants recklessly accused him of gross negligence and reckless conduct during his tenure at Westernbank Puerto Rico (Westernbank) in an allegedly defamatory letter dated December 17, 2012 disseminated to third parties, to which defendants replied (docket entry 67).

Having reviewed the allegations of the Complaint (docket entry 1), the dispositive motion and related filings noted above and their corresponding exhibits, it is the Court's position that plaintiff's claim is not a libel and/or a slander action under the Puerto Rico Libel and Slander Act (32 L.P.R.A. § 3144) against the legal representatives of FDIC. The true nature of this claim, if undivorced from its history and origins, is a tort claim against the FDIC for alleged defamatory statements made by it in its claim letter of December 17, 2010, signed by defendant Brown in his capacity as a member of the law firm of Liskow & Lewis which represented the FDIC, as receiver of Westernbank. The Office of the Commissioner of Financial Institutions of Puerto Rico closed Westernbank on April 30, 2010 and appointed FDIC as receiver.

CIVIL 11-2220CCC                              2

We address three key documents which are relevant to define the relationship between the parties in this case: (1) Order of Investigation issued by the FDIC on June 24, 2010 at Washington, D.C. signed by its Deputy General Counsel, Litigation and Resolutions Branch, Richard J. Osterman, Jr., entitled "In the Matter of: Westernbank Puerto Rico - FIN 10231" (docket entry 57-4), (2) Retainer Letter dated July 19, 2010 sent by FDIC, Washington D.C., to defendant Brown for Liskow & Lewis signed by David N. Wall, Assistant General Counsel for FDIC and accepted by Mr. Brown on July 26, 2010 (docket entry 57-5) and (3) Demand Letter dated December 17, 2010 sent by Liskow & Lewis as legal representative of FDIC "as Receiver of Westernbank" to plaintiff O'Neill and twenty-two other Westernbank officers setting forth claims for alleged failure in their primary fiduciary duty to ensure the safe and sound condition of the bank (docket entry 57-2).

The decision to investigate plaintiff O'Neill and other Westernbank officers was made by FDIC, as clearly established in the Order of Investigation. Mr. Osterman, in his capacity as deputy general counsel of FDIC, sets forth in this Order the three aspects that led to the decision, to wit: (1) the information received by him on the need to investigate, (2) his personal consideration of the information provided and (3) the express order to investigate. In paragraph one of this letter, Mr. Osterman, Jr. who as noted above was the FDIC's Deputy General Counsel, refers to the information in his possession:

> . . . that shows the necessity of investigating the acts of former directors and officers in connection with their activities related to Westernbank . . . to determine whether: (1) such former officers . . . may be liable as a result of any actions or failures to act that may have affected the Bank; (2) [whether] pursuit of litigation would be cost effective . . .; (3) the FDIC should seek to avoid a transfer of any interests . . .; and (4) the FDIC should seek an attachment of assets.

Order of Investigation (docket entry 57-4), p. 1.

At paragraphs 2 and 3, Mr. Osterman, Jr. makes the following statements:

> Having considered the information before me related to this matter, I believe that an investigation pursuant to applicable provisions of the Federal Deposit Insurance Act (the "Act'), as amended, 12 U.S.C. § 1818(n) and § 1821(d)(2)(1), is warranted.

CIVIL 11-2220CCC                                3

> Accordingly, I hereby order that such an investigation be instituted. I further order that, for the purpose of conducting this investigation, Assistant General Counsel David Wall, Senior Counsel Floyd I. Robinson , Section Chief Karren M. Prasifka, and Senior Attorney John V. Church, and/or their successors, be delegated the powers granted by the Act to issue subpoenas and subpoena duces tecum.  The aforesaid attorneys and such other attorneys or representatives of the Division of Resolutions and Receiverships as they deem necessary are delegated the powers to administer oaths and affirmations and to examine and preserve testimony under oath.

Id.

Having decided that an investigation would be instituted regarding the acts of former directors and officers of Westernbank, FDIC, through its Assistant General Counsel David N. Wall, sent a Retainer Letter to defendant Brown of Liskow & Lewis dated July 19, 2010 where the matter is described as "Re: Westernbank Puerto Rico, #00231, Investigation and Potential Litigation of Professional Liability Claims, #L100013901."  The relationship between FDIC and this law firm and FDIC's oversight role of the firm's legal services is set forth in such letter, the Legal Services Agreement (LSA) between the firm and the FDIC and the FDIC's Outside Counsel Deskbook.  This is clearly stated in the July 19, 2010 Retainer Letter, accepted by Brown for Liskow & Lewis on July 26, 2010, in the following manner:

> Your firm is being retained to provide legal services to the Federal Deposit Insurance Corporation ("FDIC") in the matter referenced above, This referral to your firm is subject to the provisions of the Legal Services Agreement ("LSA") between your firm and the FDIC, the Outside Counsel Deskbook ("Deskbook"), as it may be amended as well as the documents enclosed herein.
>
> . . . . .
>
> Please refer to the section in the Deskbook regarding the FDIC Legal Research Bank before commencing any legal research,
>
> The Oversight Attorney for this referral is John V, Church, 904.256.3853 or jchurch@fdic,gov, The Oversight Attorney is responsible for managing the progress and resolution of this matter.  The Oversight Attorney is available to provide assistance concerning FDIC special powers and significant issues of the FDIC, to discuss legal or factual issues associated with this matter, and to help resolve any questions that may arise during your representation, The Deskbook previously provided to your firm details the role and responsibilities of the Oversight Attorney.

Retainer Letter (docket entry 57-5), p. 1.

CIVIL 11-2220CCC						4

> The FDIC requires outside counsel to submit invoices on a monthly basis unless the amount (fees and expenses) to be invoiced is less than $500. If the amount is less than $500, outside counsel may submit its invoices on a quarterly basis. . . . At the conclusion or termination of this referral or any matter under this referral, outside counsel should submit its final invoice for fees and expenses within 90 days of conclusion or termination of the referral or matter . . . . Further information is contained in the Outside Counsel Deskbook.

Id., at pp. 1-2.

FDIC and Liskow & Lewis executed a Legal Services Agreement (LSA) effective on December 21, 2010 in which the parties agreed that their "relationship also will be governed by and subject to the policies, requirements, practices and procedures set forth in the FDIC's Outside Counsel Deskbook ("Deskbook"), incorporated herein by reference, as from time to time amended." Docket entry 79-1, at p. 1. The law firm agreed to provide legal services in accordance with the fees or hourly rate structure for each attorney assigned to work on FDIC matters, set forth on an attached schedule which could only be amended by written consent of the legal division of the FDIC. Liskow & Lewis, in its sole capacity as legal representative of FDIC, upon conclusion of its investigation, assisted by Oversight Attorney Church, Senior Attorney for the FDIC, sent the Demand Letter to plaintiff O'Neill and other Westernbank directors and officers. The following excerpts establish that Liskow and Lewis in its role as legal representative of FDIC as receiver of Westernbank set forth and gave notice of the wrongful acts asserted by the Receiver against the officers and directors.

> This firm represents the Federal Deposit Insurance Corporation ("FDIC"), as Receiver of Westernbank Puerto Rico (the "Receiver"). We write to assert Claims against the former officers and directors of Westernbank Puerto Rico ("Westernbank" or "the Bank") identified below arising out of losses incurred by the Bank and caused by the conduct of those officers and directors and to provide formal notice of Claims made on the referenced Executive Liability and Organization Reimbursement Insurance Policy issued by Chartis Insurance Company (the "D&O" Policy) and the referenced excess policies.
>
> This letter constitutes a monetary demand and notice of Claims under the policies. Nonetheless, you should forward this letter to each of the insurance

CIVIL 11-2220CCC                                   5

>carriers listed above before December 31, 2010 to fully protect your legal rights under the policies. Contact information for the insurance policies is provided above and at the end of this letter.

Demand Letter (docket entry 57-2), p. 1.

>The wrongful acts asserted by the receiver against the named former officers and directors of the Bank constitute actionable breaches of fiduciary duty under applicable law.

Demand Letter (docket entry 57-2), p. 20.

>All claims herein are asserted within the applicable prescriptive period under Puerto Rico law. The applicable prescriptive periods were suspended and did not begin to run until the Bank was placed into receivership because the Board was adversely dominated by the individuals who caused the losses. FDIC v. Bird, 516 F. Supp 647, 652 (D P.R. 1981).
>
>. . . . .
>
>The wrongful acts of Westernbank's Board members, Senior Lending and Credit Committees members, and other officers identified above led directly to losses in excess of $367 million suffered by the Bank. These losses are covered by the D&O policy and related excess policies identified above. This letter is a formal demand for payment of the losses in the amount of $367 million and constitutes formal notice of Claims under the policies made against all of the insureds.

Demand Letter (docket entry 57-2), p. 22.

The wrongful acts listed by FDIC-R at page 21 of its letter raised acts of gross negligence and breaches of duties of care and good faith against the former officers and directors of Westernbank. References were made to plaintiff O'Neill at page 12, 15-16 regarding a Plaza CCD Development Corp. Loan and the Zalduondo Release of Liability.

Defendant Brown described during his November 13, 2012 deposition (docket entry 57-16) the nature of the work performed by his law firm upon being retained by FDIC-R to provide legal services related to the investigation and potential litigation in the Westernbank matter:

>Q   When was this Westernbank case referred to Liskow & Lewis?
>
>A   August of 2010. I'm sorry, July of 2010.
>
>Q   And do you know by whom?

CIVIL 11-2220CCC                                6

   A   The referral came from . . . the actual referral I believe came from the Head of Professional Liability Unit within the FDIC. I'm not exactly sure of the name of the person at this time, but the referral letter came from the Head of the Professional Liability Unit within the FDIC.

   Q   And when you received that referral letter what were you asked to do by the FDIC as it pertains to Westernbank?

   A   To assist the FDIC in the investigation of potential professional liability claims arising out of the failure of Westernbank.

   Q   And were you the lead attorney in that case referred by the FDIC?

   A   I was the lead outside counsel, yes.

   Q   And who was in-house for the FDIC or is the in-house for the FDIC in this case?

   A   John Church

   Q   What was asked of you, you and your firm to do in this case by the FDIC?

   A   At the investigation stage?

   Q   Yes.

   A   To work with the investigators within the FDIC's investigation unit and with Mr. Church to analyze the institution files, loan files, examination files, regulatory files, to interview witnesses and in this particular case, if needed, to take administrative depositions in order to investigate the potential for professional liability claims not just Director-Officer Liability claims but other potential professional liability claims if found that had merit. And also to advise that other claims perhaps not be brought because there was not merit.

   Q   You mentioned a number of documents that you at the firm reviewed. Could you mention those again for me? Loan files . . .?

   A   Well this is you know, not meant to be an exclusive list but . . .

   Q   I know.

   A   Loan files, examination reports, internal files, addressing loans, examination reports, regulatory criticisms. As I mentioned we worked closely with the investigations unit and the investigators reviewed the loan files and took from them relevant documentation for us to review.

Deposition of Mr. James A. Brown (docket entry 57-6), page 11, line 6 through page 12, line 25.

CIVIL 11-2220CCC                                    7

The historical context of the professional liability claims against Westernbank's directors and officers is squarely placed within the statutory role of FDIC as receiver acting in its governmental capacity while it is winding up the affairs of a failed banking institution. Plaintiff, invoking diversity jurisdiction, framed his complaint as a damages claim based on the Law of Libel and Slander of Puerto Rico, 32 L.P.R.A. § 3144, and the general negligence action under the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. The sole defendants are individual attorneys and the law firm retained by the FDIC to conduct an administrative investigation and, subsequently, to represent it before this Court in the lawsuit pursued by FDIC-R against former Westernbank directors and officers for alleged negligence and breach of their fiduciary duties. Plaintiff O'Neill has completely disconnected his libel claim from the proceedings which were ordered by FDIC-R, both administrative and judicial. There is a deconstruction of the claim to recast it as libel/ slanderous statements by the defendant law firm, thereby isolating such statements from their author: FDIC-R. What the firm did in its Demand Letter, as legal representatives of FDIC-R, was to give formal notice to the Westernbank directors and officers and the insurance carriers of FDIC-R's claims against them, allegedly arising out of losses incurred by Westernbank and caused by their conduct. The Demand Letter includes the following indications:

> The Bank's Board and senior management were well aware of these issues [referring to the approval of bank loans which violated financial and regulatory safeguards and the Bank's problematic asset-based lending division known as Westernbank Business Credit "WBC")] through FDIC examination reports, warnings from auditors, and other sources of material deficiencies in the operations of the Bank, including the Bank's lack of sufficient internal controls [yet t]hey ignored the warnings.

Demand Letter (docket entry 57-2), at p. 4.

The Demand Letter identified as "red flags" the following matters:

> - "Multiple FDIC reports of examination warned management of material deficiencies in operations and internal controls . . . Unsafe and unsound practices [were] noted in the FDIC's reports of examination for the years 2004 through 2008." Id. Fifteen such unsafe and unsound practices were listed as having been noted in these FDIC's reports.

CIVIL 11-2220CCC					8

- "The examination reports cited numerous regulatory violations, including: violations of FDIC Rules and Regulations Part 323 (relating to appraisals), violations of Appendix A of Part 365 of the FDIC Rules and Regulations, and violations of the Interagency Appraisal and Evaluation Guidelines (lack of appraisal program compliance)." Id., at p. 5.

- "The Bank's external auditor . . . alerted the Board and senior management to serious problems within the Bank. . . . The auditors noted . . . that the rapid expansion of the Bank's lending function had left the Bank with an outdated credit review function to monitor loans for possible impairment . . . [and] also . . . alerted to problems with the WBC division in particular." Id.

- "The Board and senior management knew that the Bank's overall financial condition was deteriorating years before closure. For example, from 2005 forward, asset quality declined precipitously. This was a clear signal to the Board and senior management of the severe problems within the Bank. . . . Despite these glaring red flags, the Board and management failed to take effective curative actions and the Bank continued to make reckless and imprudent loans . . ." Id., at pp. 5-6.

These indications as to Board and management deficiencies are followed by a breakdown of specific loans which are singled out as having "contributed substantially to the Bank's losses and ultimate failure." Id., at p. 7. The Demand Letter then points out that in each case "the individual loan officers recommending and/or administering the loan and the Senior Loan Committee and/or Board members approving and/or ratifying the loan breached their fiduciary duties to the Bank." Id. This statement is followed by a detailed discussion of nine individual loans, two of which mentioned plaintiff O'Neill among the responsible persons, and specific findings of loan deficiencies and negligent and reckless conduct by officers which resulted in losses to the Bank estimated to be in the millions of dollars. At footnote 3, page 7 of the Demand Letter it is stated that "[t]he Receiver's investigation of these and other loans is continuing." (Emphasis ours.) The loans identified as loans which contributed substantially to the Bank's losses are the following:

- Inyx, Inc. and Affiliate Loans

- Museum Towers LP Loan

- Plaza CCD Development Corp. Loan

- Yasscar Development Corp. Loan

CIVIL 11-2220CCC                              9

- Yasscar Caguas Development Corp. Loan

- Intercoffee, Inc. Loan

- Palmas Lakes, Inc. Loan

- 362 Del Parque Corp. Loan

- Sabana Del Palmar, Inc. Loan

The Demand Letter refers to all the loan deficiencies pointed out as to each of these loans as "the claims that have been asserted by the Receiver." Id., at p. 19 (emphasis ours). At pages 20-21, the Receiver asserts wrongful acts. It is there stated that "[t]he wrongful acts asserted by the Receiver against the named former officers and directors of the Bank constitute actionable breaches of fiduciary duty under applicable law." (Emphasis ours). The defendant law firm's Outside Counsel for FDIC-R copied John V. Church, Senior Attorney of the FDIC's Legal Division.

In sum, the entire contents of the Demand Letter which is at the heart of plaintiff's libel/slander action is an extensive narrative of claim upon claim, all asserted by FDIC as Receiver of Westernbank. If there were any plausible tort claim for defamation as averred by plaintiff, it would lie squarely on FDIC as Receiver by way of a tort claim against the United States under the Federal Tort Claims Act. See 28 U.S.C. §§ 2401(b), 2671 and 2674. The Demand Letter sent by FDIC-R through its legal representative constituted formal notice of its claims against Westernbank's officers and directors and its insurers as well as a monetary claim which served to interrupt the applicable prescriptive period which commenced to run once the Bank went into receivership.[1]

We view this Complaint as an attempt to bypass the legal hurdles that plaintiff would have to wrestle with had he defined his claim in its true nature as a tort claim against the United States for wrongful or negligent acts by a government instrumentality or agency.

---

[1] See the Demand Letter's reference to the accrual of the prescriptive period at p. 22.

CIVIL 11-2220CCC                            10

For reasons different than those raised in support of the Motion for Summary Judgment (**docket entry 57**), the same is GRANTED.  Judgment will be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on June 23, 2014.

                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge